**SHAPIRO, Plaintiff-Appellee, v. KORNICKS et, Defendant-Appellants.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 23245.   Decided January 26, 1955.

482

Paul P. Sogg, Cleveland, for plaintiff-appellee.
Keith Lawrence, Cleveland, for defendant-appellants.

## OPINION

By SKEEL, J:

This appeal comes to this court on questions of law from a judgment for the plaintiff appellee entered on the verdict of a jury. The action is one seeking damages for the breach of an alleged verbal warranty claimed, to have been made by the defendant, as an inducement whereby plaintiff purchased certain residence property from the defendant under a written purchase agreement.

The plaintiff's petition, after alleging the purchase of the property from the defendant, alleges:

"Plaintiff further states that when she purchased the premises, the defendants herein did orally warrant that the same was built in a first class manner, free from any latent defects. * * *."

The petition then alleges that after taking possession, certain defects appeared, necessitating certain repairs, which allegation is followed by a long list of items, including "leaking basement; crumbling front steps; cracked front door; radial cracks in basement floor; support column for steel beam; dark red stain in back and insufficient coats of paint," and many others, whereby it is alleged the total cost of repairs was over three thousand dollars for which amount plaintiff asked judgment. All of the affirmative allegations of the petition are denied by answer except that the defendant did sell a house and lot to the plaintiff under the terms of a written contract in which all of the terms of the sale were set forth, the contract being signed by both buyers and the seller.

A reply denied that all of the terms of the agreement were contained in the written agreement.

The evidence discloses that the purchasers intended to purchase a fully completed house. The defendant builder was not employed by the plaintiff and his wife, now deceased, to build a house for them under a building contract. The defendant claims that the house was fully completed when the contract was made. The plaintiff in his evidence claims some unfinished items, but such items are not referred to in the pleadings and did not form a part of the subject matter of this action.

The evidence shows that before purchase of the house and lot the purchasers examined it with the assistance of others, including plaintiff's father who had been a carpenter for many years and familiar with residence construction. The only evidence in the record, as to any statement by the seller that would tend to support plaintiff's claim of "verbal warranty" which evidence was that of the plaintiff, even if it be granted that such evidence is admissible, to vary or add to the terms of the written contract, was as follows:

"Q. Was there any discussion at that point about how the house would be finished or when?

"A. None at all. This was supposed to be a receipt.

"Q. When was the discussion—was there a discussion as to when the house could be completed?

"A. Not as to when, but if it would be completed.

"Q. What was that discussion?

"A. We pointed out several things that were not completed in the home and actually at a later date I drew up a list of these things and Mr. Kornicks agreed verbally to see that they are finished.

"Q. What else was said about the house as to its condition and work, and so forth?

"A. He said it was guaranteed to be of good workmanship.

"Mr. Lawrence: I object to that and ask it go out

"The Court: I will sustain that. What was said at that time?

"The Witness: We asked him directly, 'did you use the best materials and build this house good'? and he says, 'I have got a reputation behind me where I couldn't afford to build a bad home.'"

After the agreement to purchase was signed, the plaintiff also testified that the defendant told the plaintiff and his father-in-law, who was going to help finance the purchase,—

"I know your father and I have been building for 35 years and all my homes are good homes."

The most that can be said for this evidence is that the defendant's statement "I have a reputation behind me where I can't afford to build a bad home" is at most an expression of opinion and could not have been considered by the purchaser as an express warranty.

There is, therefore, no competent evidence in the record to support the plaintiff's claim of express warranty. In any event the contract of sale between the parties was in writing and cannot be extended or modified by parol evidence. The sales agreement introduced in evidence, sets forth the description of the property, the consideration for the sale, the place the deal was to be escrowed and provides for pro-ration of taxes. The escrow agreement which was drawn by plaintiff's lawyer, filled in all of the remaining details of the transaction and the contract was carried out—the plaintiff, or rather his wife, becoming the grantee and owner and defendant received the full consideration as provided by the agreement as modified in the escrow agreement. Neither of these writings in which the terms of the sale are fully set forth makes mention of a warranty. The sale of said property under a contract such as was the basis of the sale in this case, must be judged on the contract and the seller is not liable for damages because of the defective conditions of the property claimed to have developed after the purchasers came into possession, unless the seller was guilty of fraud, in failing to make disclosure of known latent defects or other fraudulent representations.

In **19 O. Jur., 422, Sec. 134,** the rule is stated as follows:

"Statements by the vendor of real property as to its condition, quality and character are generally regarded as mere expressions of opinion and, when such is the case, do not constitute fraud. But some courts hold

that false representations as to the quality of land may constitute fraud, if made under such circumstances as will justify reliance thereon. In Ohio, misrepresenting the quality of land is a cheat which will entitle the purchaser to recover for his injury."

In the case of **Kerr v. Parsons, 83 Oh Ap 204,** it is said in the fourth paragraph of the syllabus:

"4. In the absence of written warranty in compliance with the statute of frauds, no implied warranty as to condition arises in connection with a sale of real estate induced by oral representations."

And at **page 208,** the court says:

"Ordinarily, there is no implied warranty as to the condition of real estate sold or leased and oral evidence of a warranty would not be admissible to add to a deed or lease. 4 Thompson on Real Property (Perm. Ed.) 2, et seq., Sections 1545, 1546. An express warranty to be enforceable, would be required to be in writing to satisfy the statute of frauds."

The question of fraud is not pleaded in this case and the plaintiff's case must be tried on the issues presented by the pleadings.

The defendant also claims that the court committed error prejudicial to his rights, in the admission of evidence. On cross-examination, the defendant was asked if he did first-class work, to which he answered that he had not had any complaints in thirty-five years, except those of the plaintiff, which were not made until the plaintiff had been in the house for a year. Then the defendant was asked:

"Q. Never had a complaint from anybody?

"A. Thirteen (probably meant thirty) years they send me a Christmas card, for years, I can mention a dozen places.

"Q. Isn't it a fact, Mr. Kornicks, you have unfinished houses in South Euclid that they will not let you finish?

"Mr. Lawrence: I object to that.

"The Court: Sustained."

Thereafter, the South Euclid building inspector was called and asked if there was a record in the city of Mr. Kornicks not complying with building regulations. The witness was permitted to answer the question in the affirmative, as bearing on the credibility of Kornicks as a witness. Permitting these questions and compelling the witness to answer constituted reversible error. The building inspector could not, under any circumstance, testify as to complaints of other purchasers of which he had no knowledge, and the alleged complaints about which he had testified were in no sense in conflict with the defendant's testimony on the subject of complaints of customers. The admission of the testimony of the building commissioner as to his complaints against the defendant's deviation from plans, was highly prejudicial and constituted reversible error.

The plaintiff both testified that before and after the agreement of sale was made, but before the escrow was concluded, the buyer requested and the defendant agreed to make certain corrections, additions or repairs, and to finish certain unfinished items as a part consideration for the purchase of the house. The parties differ materially as to what these items were, the defendant testifying that he was to put an additional railing around the stair well in the attic (which he' claims was voluntarily done); a ridge board at the peak of the roof; repair a broken window in the side door; loosen up the windows stuck with paint, and one or two other minor items.

The plaintiff testified to many other items which he claims were not done and which, in part, make up the list of items for which damages are asked, for failure to finish this work. While the pleading of the plaintiff did not clearly allege such default, yet, if liberally construed, such claim might be said to be included in plaintiff's cause of action, and in all events evidence was received without objection on the part of the plaintiff, in support of such claim and defendant's claim that all such promises made were fully performed by him. Whether the defendant completed the house was therefore an issue in the case and should have been submitted to the jury under proper instructions from the court.

An examination of the charge discloses that the issue of completion of the house was not clearly defined and that the remainng issues presented by pleading and the evidence were not properly or clearly defined so that the jury could know what issues of fact were being submitted to them.

We find, therefore, that substantial justice was not done the defendant for the reasons set forth in this opinion, and the judgment is reversed and the cause remanded for further proceedings according to law. Exceptions noted. Order see journal.

HURD, PJ, KOVACHY, J, concur.