[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 319 
This case involves the issue of implied warranty in the sale of real estate.
In 1972 Ms. Capra was a licensed real estate salesperson. Deciding to begin her own real estate brokerage business, she purchased a residential lot for the purpose of building a house and selling it to a member of the public. She knew Lowery, who had been buying lots and building houses thereon for sale. Capra had sold several of his houses and had aided him in securing construction financing. She entered into an agreement with Lowery to supervise the building of her house for a fee. The exact nature of the agreement was disputed. However, Lowery did secure the materials, workmen and subcontractors on his credit and did work and spend time at the site during the construction. Capra secured the financing, the lot and the plans and specifications. She directed a change in the elevation of the house and paid all the bills for labor and material.
After construction began, plaintiffs Smith contracted to purchase the house from Capra. The Smiths said that both Capra and Lowery stated to them that the house was being well constructed with good materials and workmanship and that it would be a good house. The Smiths closed the purchase on March 7, 1973. On January 25, 1975, the basement wall of the house collapsed requiring extensive repairs. There was testimony that the wall was improperly constructed and without proper drainage.
Plaintiffs brought suit against both Capra and Lowery upon theories of misrepresentation and fraud, implied warranty and negligence. Capra cross-claimed against Lowery for negligent performance of his agreement with her. The trial court directed a verdict in favor of plaintiffs and against Capra on the claim of implied warranty. Presumably, there was no consideration thereafter of the other theories of recovery presented by the complaint of plaintiffs. The claims and cross-claim against Lowery were submitted to the jury with verdicts in favor of Lowery. Damages of $11,431.49 were assessed against Capra. Remittitur on motion for new trial was required and judgment was reduced to $9,358. Capra appealed.
The primary issue presented is whether the court erred in giving the affirmative charge against Capra on the claim of implied warranty.
The right of recovery on an implied warranty arising from the sale of a new house by the builder-vendor to a first vendee first was declared in this state by this court in the case ofCochran v. Keeton, 47 Ala. App. 194, 252 So.2d 307 (1970). The case was affirmed upon certiorari to the supreme court. Cochranv. Keeton, 287 Ala. 439, 252 So.2d 313 (1971). We discern no reasonable cause for repeating here what was said in the decisions in that case concerning the reasons for abolishing the doctrine of caveat emptor and applying the principle of implied warranty to the sale of realty. However, we feel it necessary to iterate the extent of the abolishment of the old and application of the new.
The abolishment of caveat emptor and the adoption of the principle of implied warranty of workmanship and fitness for habitability in Cochran v. Keeton, was limited to the sale of a newly constructed house by a builder-vendor to a first vendee. It is within this strict limitation that we view this case.
It is the contention of Capra that she was not a "builder-vendor" as that term is properly defined, or that the evidence is in conflict as to whether she was a "builder-vendor," thus the issue should have been submitted to the jury. *Page 320 
We say first to Capra that she cannot escape the designation as "builder" merely because she did not personally perform the work or because she did not personally supervise the work. One may be a "builder" even though a general contractor actually does the building. Bolkum v. Staab, 133 Vt. 467, 346 A.2d 210
(1975). If one is engaged in building houses or causing them to be built for the purpose of sale to the public, he is a builder. If, in addition, he places them in the stream of commerce as a vendor, he is in the business of builder-vendor. It is because one is engaged in the business of builder and seller that the law of Cochran v. Keeton presumes a superior knowledge of the product and an advantage over the purchaser in the sale of a new house. Because of such advantage, as a part of the sale, a warranty of good workmanship and fitness of purpose is implied. In every case from other states that we have studied, with one possible exception,[1] the principle has been limited in application to sale of a new house to a first purchaser by one engaged in the business of builder-vendor.
In Cochran v. Keeton, we relied for support of our opinion, in part, upon the Washington case of House v. Thornton,76 Wn.2d 428, 457 P.2d 199 (1969). We turn again for support for what we have said here to the Washington case of Klos v.Gackel, 87 Wn.2d 567, 554 P.2d 1349 (1976). Therein the court said: "The essence of the implied warranty of suitability or habitability requires that the vendor-builder be a person regularly engaged in building, so that the sale is commercial rather than casual or personal in nature." We find the following in the case of Hartley v. Ballow, 286 N.C. 51,209 S.E.2d 776 (1974):
 "We hold that in every contract for the sale of a recently completed dwelling, and in every contract for the sale of a dwelling then under construction, the vendor, if he be in the business of building such dwellings shall be held to impliedly warrant to the initial vendee that . . . the dwelling, together with all its fixtures, . . . is constructed in a workmanlike manner. . . ."
In light of our decision in Cochran v. Keeton and its affirmance by the supreme court, we perceive the law in this state to be that expressed in the quotations from the above-cited cases.
We equated our decision in Cochran v. Keeton with the implied warranties of merchantability and fitness of purpose in the sale of consumer goods as codified in the Uniform Commercial Code. (§ 7-2-315, Code of Alabama 1975). That warranty arises from a commercial transaction, normally only where the seller is a merchant, having or being presumed to have the superior skill or knowledge of the product, upon which the purchaser is entitled to rely. Hall v. City of Huntsville, 291 Ala. 124,278 So.2d 708 (1973). We are consistent in now holding that an implied warranty of realty can only arise from a similar commercial relationship.
In view of the evidence in this case, the trial court must be held to have erred in directing a verdict in favor of plaintiff. There clearly arises from the evidence a question of fact for the jury as to whether Capra was in the business of a builder-vendor.
Though it was not reserved as error and is not contended as such by Capra, the conception of the trial court of the applicable law is shown by a portion of the oral charge. The court said as follows:
 "The law of this state says this, in effect, that when a person builds a house or has it built, and if the prospective buyer sees that house while it's under construction and observes it while it's under construction and then buys it, though law places what we call an implied warranty on the seller of that house and that would be Ms. Capra in this case, and that is that the house is reasonably fit and suitable for a dwelling house." *Page 321 
Following this statement, the court directed a verdict against Capra. It is evident that in directing the verdict, the court misunderstood the law of implied warranty of real estate.
The only law of implied warranty of real estate in this state is that carved from the rule of caveat emptor by Cochran v.Keeton. Prior to that time, the law was as stated in DruidHomes, Inc. v. Cooper, 272 Ala. 415, 131 So.2d 884 (1961). The theory of implied warranty was presented in that case and its application unequivocably rejected by the supreme court in any real estate purchase contract. In affirming our decision inCochran v. Keeton the supreme court rejected and overruledDruid Homes only "in the sale by a builder-vendor of a newly constructed house." We believe this court would not be in order to expand that single exception. We challenged the prerogative of the supreme court to change its mind as to a principle of law in Cochran. We do not deem it propitious to again tempt its good will and openmindedness. If the rule of Cochran is to be expanded to apply to any person building and selling a new house or to the mere selling of a new house, the supreme court must so declare. However, we do not hesitate to state that the learned trial judge misunderstood the rule of Cochran v. Keeton
and erred to reversal in directing a verdict in favor of plaintiff and against defendant Capra.
Another issue presented is that the verdict in favor of defendant Lowery in the matter of the cross-claim of Capra is contrary to the great weight of the evidence.
A jury verdict is presumed correct and that presumption is strengthened by denial of a motion for new trial. It will not be set aside on appeal unless it is so against the great preponderance of the evidence as to be clearly wrong and manifestly unjust. Bateh v. Brown, 293 Ala. 704, 310 So.2d 186
(1975). The only question presented by the cross-claim of Capra against Lowery, as we see it, was whether Lowery breached the agreement with Capra as to the building of the house. The evidence as to the terms of that agreement and the obligations and responsibilities of Lowery thereunder were sharply in conflict. The resolution of that conflict was a matter for the jury. Lehigh Portland Cement Co. v. Dobbins, 282 Ala. 513,213 So.2d 246 (1968). The jury decided in favor of Lowery. There was no error.
The last issue charges excessiveness of the verdict. That issue is pretermitted in view of the necessity of reversing and remanding for further proceedings below.
Though it was not presented for consideration on this appeal, in view of a probable retrial, we suggest both counsel and the court review the last paragraph, and particularly the last two sentences, of the court's oral charge to the jury.
REVERSED AND REMANDED.
BRADLEY and HOLMES, JJ., concur.
[1] Lane v. Trenholm Building Co., 229 S.E.2d 728 (S.C. 1976).