Joseph Earl Massey sued Weeks Realty Company, Inc., and Maxine Goodson, who was characterized in the complaint as "a saleswoman for" Weeks Realty Company who "at all times pertinent hereto was acting within the line and scope of her employment with" Weeks, for misrepresentation in the sale of used residential real estate. The trial court granted the defendants' motion for summary judgment. Massey appeals. We affirm.
Massey purchased a repossessed Farmers Home Administration (FHA) house through Weeks and Ms. Goodson. Ms. Goodson, independently and not as an agent of Weeks Realty, had contracted with FHA to refurbish the house in accordance with directions from FHA. After the house had been refurbished, Massey's brother-in-law submitted a bid to purchase the house. He did not meet the FHA qualifications, and Massey submitted a bid to purchase the house for $25,000 and signed a form in which he agreed to purchase the house "as is, in its present condition." This was explained to Massey in detail before he purchased the house. The Weeks Realty purchase agreement form that Massey signed contained the following provision: "The agents do not warrant or guarantee the condition of this property or any of the equipment therein." He was given a copy of this agreement at the time he signed it.
The representations, which are the basis for this action, were allegedly made by Ms. Goodson before either of the above documents was signed. The alleged representations were as follows:
 "Mrs. Goodson told me again that she had done the refurbishing work on the residence; that she had done similar work on Farmers Home Administration residential property in the past; and that one of the things that she had specifically done was to have the residence professionally sprayed for all types of bugs and insects. In viewing the exterior of the residence . . . I noted that one of the exterior trim columns . . . was damaged at or near its base. Upon seeing this, Mrs. Goodson stated that the damage was dry rot caused by water blowing up against the front of the house and that it could be inexpensively replaced. . . ."
Massey personally inspected the house several times prior to purchasing it. He *Page 173 
did not ask Ms. Goodson if the house had been checked or treated for termites. She did not tell him specifically that it had been checked or treated for termites. Massey could have hired someone to check the house for termites prior to purchasing it.
Massey alleged that several months after he purchased the house "burrows started coming out on the inside wall." He says he later learned that the front of the house was infested with termites and that extensive damage had been done to the front wall and front columns by termites.
There is no evidence that Ms. Goodson did not refurbish the house in accordance with her agreement with FHA.
In Ray v. Montgomery, 399 So.2d 230 (Ala. 1980), this Court affirmed a summary judgment in favor of former owners of a house, who were sued by the purchasers of the house for failing to disclose to them that there had been termite damage in the house. We held at 233:
 "Alabama retains the caveat emptor rule with regard to the resale of used residential real estate. Druid Homes, Inc. v. Cooper, 272 Ala. 415, 131 So.2d 884 (1961). Although we have abrogated the caveat emptor rule in sales of new residential real estate by a builder/vendor, Cochran v. Keeton, 287 Ala. 439, 252 So.2d 313 (1971), we have not extended the Cochran rule to the sale of used homes, and we are not inclined in this case to depart from a long-standing rule which provides certainty in this area of the law. A purchaser may protect himself by express agreement in the deed or contract for sale. 272 Ala. at 417, 181 So.2d 884. Here, the contract expressly provided 'no warranties' and 'as is' clauses to which the Rays agreed. They had ample opportunity to inspect the bearing timbers of the house before purchasing it."
Massey bought the house "as is." He said he understood that if he "found that the pipes were inefficient or the roof had a leak in it or such as this, that that was my obligation to replace those type things." Also, with reference to the representations allegedly made by Ms. Goodson, the real estate contract, which was signed by Massey after the representations were made, expressly provided: "The agents do not warrant or guarantee the condition of this property or any of the equipment therein."
The evidence is undisputed that Massey had an opportunity to inspect this house. It does not appear that Massey was unlearned or in any way afflicted with physical or mental disability.
One of the four elements of actionable fraud is justifiable reliance. Lucky Manufacturing Co. v. Activation, Inc.,406 So.2d 900 (Ala. 1981). On the basis of Marshall v. Crocker,387 So.2d 176 (Ala. 1980), and Holman v. Joe Steele Realty, Inc.,485 So.2d 1142 (Ala. 1986), under the undisputed facts in this case, as a matter of law, Massey did not have the right to rely on the oral representations of Ms. Goodson made prior to the execution by Massey of the form containing the "as is" provision and the purchase agreement that provided that the realtor did not warrant or guarantee the condition of the property.
AFFIRMED.
MADDOX, JONES, ALMON, SHORES, BEATTY, ADAMS and STEAGALL, JJ., concur.