The controversy in this case revolves around Terry K. and Laura A. Baker's purchase of used residential property, which later was discovered to have significant structural damage. Leatherwood, Inc., d/b/a Coldwell Banker First Ozark Realty, appeals from a judgment based on a jury verdict awarding the Bakers $135,828.40 in compensatory damages and $75,000 in punitive damages. Leatherwood contends that the trial court erred in submitting this case to the jury. We agree, and we reverse and remand.
In 1987, Fred and Laura Hovater, the sellers of this property, who are not parties to this suit, contacted Coldwell Banker First Ozark Realty (hereinafter "Ozark Realty"), to list the property in question. The Bakers, who had driven by the property, contacted Mary Woods, an agent at Ozark Realty, expressing an interest in seeing the property. The Bakers looked at the property three or four times and were interested in purchasing it for their home. Subsequently, Mrs. Baker heard from an outside *Page 1274 
source that there were settling problems in the neighborhood and, thereafter, Mr. Baker telephoned Mary Woods to inquire about such problems. Ms. Woods contacted the Ozark Realty agent who had originally dealt with the Hovaters and asked that she question the Hovaters about any structural problems with the property. Woods then related to the Bakers that the Hovaters knew only of one crack around the air conditioning system. Thereafter, Mr. Baker and Woods viewed the property again to satisfy the Bakers' concerns. The Bakers signed an "as is" contract on the house sometime after inspecting it and questioning Woods about structural damage.
A few months after moving in, the house began to crack in several places, and the damage over the years since has been major. The Bakers sued Ozark Realty, contending that its agents misrepresented to them the condition of the house and contending that when they purchased the house they relied on the representations made by those agents.
The Bakers contend that the court properly submitted their negligence and fraud claims to the jury, especially in light of the fact that at the time of the sale, Ozark Realty had in its files a 1984 Veterans' Administration ("VA") statement regarding the property and indicating possible structural problems with the house. The Bakers argue that Ozark Realty should have consulted its files, and they insist that had it done so it would have discovered the VA statement. Ozark Realty admits that the VA statement was in a closed file relating to a previous 1984 sale of this property; however, Ozark Realty argues that the property had changed hands twice between the 1984 sale and the sale to the Bakers and that Ozark Realty had not been involved in either of those transactions. Furthermore, notwithstanding the existence of the VA statement in the file, Ozark Realty contends that the signing of the "as is" statement by the Bakers — after being made aware of potential problems in the neighborhood by an outside source and after making their own inspection of the property — prohibits them from now claiming that they were deceived in any way regarding the condition of the property. We agree.
We sympathize with the Bakers, because it is clear from the record that the problems with the house are severe. However, the Bakers signed an "as is" statement after being placed on notice by others that there were possible foundation problems in the neighborhood. They were on notice of possible problems, but chose to rely on the statements of the previous owners and on their own inspections instead of hiring an expert to inspect the property. While they may have been inexperienced, they could have, and should have, sought an expert opinion before signing an "as is" statement.
 " 'Alabama retains the caveat emptor rule with regard to the resale of used residential real estate. Druid Homes, Inc. v. Cooper, 272 Ala. 415, 131 So.2d 884 (1961). Although we have abrogated the caveat emptor rule in sales of new residential real estate by a builder/vendor, Cochran v. Keeton, 287 Ala. 439, 252 So.2d 313
(1971), we have not extended the Cochran rule to the sale of used homes, and we are not inclined in this case to depart from a long-standing rule which provides certainty in this area of the law. A purchaser may protect himself by express agreement in the deed or contract for sale. 272 Ala. at 417, 131 So.2d 884. Here, the contract expressly provided "no warranties" and "as is" clauses to which the [purchasers] agreed. They had ample opportunity to inspect the bearing timbers of the house before purchasing it.' [Quoting Ray v. Montgomery, 399 So.2d 230 (Ala. 1980).]
". . . .
 "One of the four elements of actionable fraud is justifiable reliance. Lucky Manufacturing Co. v. Activation, Inc., 406 So.2d 900 (Ala. 1981). On the basis of Marshall v. Crocker, 387 So.2d 176 (Ala. 1980), and Holman v. Joe Steele Realty, Inc., 485 So.2d 1142 (Ala. 1986), under the undisputed facts in this case, as a matter of law, Massey did not have the right to rely on the oral representations of Ms. *Page 1275 
Goodson made prior to the execution by Massey of the form containing the 'as is' provision and the purchase agreement that provided that the realtor did not warrant or guarantee the condition of the property."
Massey v. Weeks Realty Co., 511 So.2d 171, 173 (Ala. 1987). SeeRay v. Montgomery, 399 So.2d 230 (Ala. 1980), and Hope v.Brannan, 557 So.2d 1208 (Ala. 1989).
Based on the fact that the Bakers personally inspected the property after questioning Woods regarding structural problems with the property, and based on the fact that the Bakers signed an "as is" statement after that inspection, without hiring an expert to inspect the property, we are compelled to reverse the judgment and remand this cause.
REVERSED AND REMANDED.
MADDOX, SHORES, HOUSTON and STEAGALL, JJ., concur.
HORNSBY, C.J., and INGRAM, J., dissent.