Gary Cruse and his wife Venita Cruse sued Randy Harris and his wife Brenda Harris, Coldwell Banker, and Graben Real Estate, Inc. (Coldwell Banker and Graben Real Estate hereinafter referred to collectively as "Graben Real Estate"), alleging defective workmanship in the construction of a house that they had bought from the Harrises and alleging that the defendants had fraudulently misrepresented and/or suppressed material facts concerning the condition of the house. Graben Real Estate moved for a summary judgment; the trial court granted the motion and then certified the judgment as final, pursuant to Rule 54(b), Ala.R.Civ.P. The Cruses appeal.
A summary judgment is proper and must be affirmed where there exists no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. *Page 715 
Rule 56(c), Ala.R.Civ.P. Viewed in a light most favorable to the Cruses, the evidence shows that the Cruses were in the market for a home in early November 1992. They contacted Graben Real Estate to find out what was available, and Graben Real Estate agent Mischa Kelley took the Cruses to see the Harrises' house. Randy Harris, a building contractor, had built the house for sale, and he and his wife were occupying it at that time. Graben Real Estate listed that house as "new" in its real estate advertisements, and Mischa Kelley told the Cruses that it was new. She also told the Cruses that the house was comparable to, or even better than, the other houses in the neighborhood; that it was a good buy; and that if they purchased the house they could look forward to years of convenient, trouble-free living.
The Cruses signed a contract on November 11, 1992, to purchase the house from the Harrises. The Cruses visited the property on two to four occasions before the closing date and partially inspected the house. When they told Kelley that they wanted to hire an independent contractor to assess its condition, she told them that it was not really necessary to do so because Randy Harris was a contractor and because the house was well-built. The Cruses did not have the house professionally inspected, nor did they closely inspect it themselves, before they purchased it on November 30, 1992.
On that day, the Cruses signed an "Acceptance Inspection Contract," which stated, in relevant part:
 "As of this date we, the undersigned Purchasers, have inspected the above property or have waived our right to do so and accept it in 'as is' condition.
 "We expressly agree that the decision to purchase the property was based on our own inspection and evaluation and that neither the Seller nor any Brokers or Salespersons involved in any part of this transaction made any representations, statement or claims as to the age, square footage, or condition of the property . . . upon which we based our decision to purchase.
 "We also agree that the Brokers and Salespersons have no responsibility or liability for repair or replacement of any of the property or its equipment items."
The Cruses took possession of the residence in mid-December 1992 and, soon thereafter, they began noticing many defects in the structure and in its electrical wiring. They contacted Graben Real Estate, who sent an agent to remedy the problems. The defects continued and multiplied, and this lawsuit resulted.
To establish fraudulent misrepresentations, the Cruses are required to show that Graben Real Estate made a false representation concerning a material fact and that they relied upon that representation, to their detriment. Fennell RealtyCo. v. Martin, 529 So.2d 1003 (Ala. 1988). The Cruses contend that Graben Real Estate represented to them that the house was new; that, in reliance on that representation, they decided not to hire a contractor to inspect the house and discover its defects; and that that reliance resulted in damage to them.
Graben Real Estate argues that, because the Cruses, before buying the house, saw that the Harrises were living in the house, they were not justified in relying on the representation that the house was new. Graben Real Estate also emphasizes that the Harrises signed an "as is" statement, indicating that they had inspected the house and were satisfied with its condition, and concludes that the Cruses have therefore waived any claims arising from defects in the house.
In its order, the trial court apparently found that Graben Real Estate's listing of the house as new and Kelley's statements about the condition of the house were "mere puffery," upon which the Cruses could not have justifiably relied. The trial court cited Cooper Co. v. Bryant,440 So.2d 1016 (Ala. 1983), wherein the buyers of a used residence sued their realtor, alleging a fraudulent misrepresentation arising from a real estate listing that had described the condition of the house as "excellent." This Court held that the listing merely reflected the opinion of the realtor and could not support a fraud claim, absent evidence that the realtor pointed out the description in answer to specific questions of the buyers. *Page 716 
This case presents a significantly different scenario from that in Bryant. Certainly, Kelley's comment that the Harrises' house was "better than other houses in the neighborhood" and her prediction that the Cruses would enjoy "years of convenient, trouble-free living" in the house were mere statements of opinion and would not support a fraud claim. However, Graben Real Estate's listing of the Harrises' house as "new," along with the representations of both Kelley and the Harrises that the house was "new," cannot be likewise characterized.
The unequivocal term "new," when applied to real estate, is not merely descriptive. It is a definite legal term that carries with it the implied warranty of habitability and prevents the realtor from invoking the protection of the doctrine of caveat emptor. Williamson v. Realty Champion,551 So.2d 1000 (Ala. 1989). Graben Real Estate did not represent the house to be "almost new," "like new," or "good as new"; any such representation might be deemed to be a mere expression of the realtor's opinion. Instead, Graben Real Estate marketed the house as "new," both in print and in direct response to the Cruses' queries. In so doing, Graben Real Estate made statements that went beyond the patter of sales talk and became representations of material fact. Moreover, Gary Cruse testified in deposition that he relied upon this representation in failing to hire a contractor to inspect the house before he bought it. Cruse testified that he had planned to hire a contractor, but was dissuaded, partly because he thought that "it was a new house, it's got to have at least a one-year warranty with it, and anything wrong with it, they'll stand good for it."
Graben Real Estate argues that even if it did misrepresent the newness of the house, the Cruses could not have justifiably believed the misrepresentation and relied upon it to the point that they would not closely inspect the house before buying it. Graben Real Estate relies heavily on the fact that the Cruses knew that the house was being occupied by the Harrises at the time of the sale, and concludes that this alone should have proved to the Cruses that the house was not actually new.
We do not agree that the mere knowledge of the Harrises' prior occupancy so wholly contradicted the printed and spoken representations of Graben Real Estate that the Cruses could not, as a matter of law, have justifiably relied upon them. Randy Harris told Gary Cruse that he was occupying the house only temporarily, until he completed construction on his own home. Although the record is silent as to how long the Harrises had lived in the house, it does show that they were in the house only frequently enough to incur electricity bills of $10 to $15 per month.
Graben Real Estate also argues that, regardless of whether the house was new or was used, the Cruses cannot recover because they signed an "as is" agreement at the time of the sale, thereby, Graben Real Estate says, accepting the condition of the house without a prior inspection. Graben Real Estate relies on Hope v. Brannan, 557 So.2d 1208 (Ala. 1989), wherein this Court held that buyers of a 58-year-old house who signed a statement accepting the house "as is," without independently inspecting it for defects, could not maintain an action for fraud arising from the seller's statements concerning the condition of the house.
Graben Real Estate's reliance on Hope is misplaced; in Hope, the house was not new, nor was it represented to be new. A buyer's failure to inspect the premises of a 58-year-old house before signing an "as is" agreement is hardly the equivalent of the Cruses' failure to inspect the premises of a house that their realtor had represented to be new. Gary Cruse testified that he did not closely inspect the house because he believed Graben Real Estate's representations and relied on the warranty that he believed he would have, as the owner of a "new" home. In Alabama, a new residence does carry with it an implied warranty of habitability, Cochran v. Keeton, 287 Ala. 439,252 So.2d 313 (1971); thus, we cannot say that the Cruses' complete reliance on this warranty was without justification if they believed Graben Real Estate's representation that the house was new.
The evidence establishes that Graben Real Estate misrepresented a material fact and *Page 717 
creates a jury question as to whether the Cruses could have justifiably relied upon this misrepresentation in deciding not to closely inspect the house before buying it. The fact that the Cruses knew the house was occupied by a third party before they bought it, along with the fact that they signed an "as is" agreement, separate from the purchase contract, for a house they claim to have regarded as new, are elements for the jury to consider. The trial court's summary judgment for Graben Real Estate is therefore reversed, and the cause is remanded for further proceedings.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, SHORES, INGRAM, and COOK, JJ., concur.
HOUSTON and KENNEDY, JJ., dissent.